# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# MONROE DIVISION

| | |
|---|---|
| **LCP WEST MONROE, LLC** | **CIVIL ACTION NO. 17-00372** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **UNITED STATES OF AMERICA, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## RULING

This case involves an insurance dispute between Plaintiff LCP West Monroe, LLC ("LCP") and Defendant Selective Insurance Company of Southeast ("Selective"). Pending before the Court is a Motion for Summary Judgment [Doc. No. 43] filed by Selective. LCP opposes the motion.

For the following reasons, Selective's Motion for Summary Judgment is GRANTED.

### I. FACTS AND PROCEDURAL HISTORY

Selective is a Write-Your-Own ("WYO") Program carrier participating in the United States Government's National Flood Insurance Program ("NFIP"), pursuant to the National Flood Insurance Act of 1968 ("NFIA"), as amended.

LCP is the owner of the Shadow Glen Apartments, located at 1001 Glenwood Drive, West Monroe, Louisiana (the "Property"). The Property consists of seventeen buildings, two of which are insured by Selective.

On March 9, 2016, the West Monroe area experienced flooding. Eleven buildings located on the Property sustained some flood damage ("the Flood Loss"). At the time of the Flood Loss, two of the buildings (I and K) were insured under Selective-issued NFIP Standard

Flood Insurance Policies – General Property Forms.[1] Selective issued LCP a Standard Flood Insurance Policy on Building I under policy number FLD1415289 ("Building I SFIP"). Selective issued LCP a Standard Flood Insurance Policy on Building K under policy number FLD14155288 ("Building K SFIP").[2]

Following the March 9, 2016 flood, claims were submitted to Selective under Buildings I and K SFIPs. Upon receipt of the notices of loss, Selective began the process of adjusting the claims.

Selective assigned an independent adjuster to the claims. Working with LCP, the adjuster determined that LCP was entitled to payments for flood-related damages under Coverage A. On May 16, 2016, Selective issued advance payments of $50,000 under Building I SFIP and $50,000 under Building K SFIP.

Proofs of loss must normally be submitted within 60 days, pursuant to 44 C.F.R., Pt. 61, App. A(2), Art. VII(J)(4). FEMA may authorize an extension to file claims outside the 60-day period. For Louisiana flood claims commencing on March 9, 2016, FEMA authorized an additional 60 days, giving insureds a total of 120 days after the date of loss to provide their signed and sworn Proof of Loss in support of amounts sought. In pertinent part, the extension provides:

> . . . To ensure that NFIP policyholders have sufficient time to finalize their claims, pursuant to Paragraph D of the General Conditions section of the SFIPs and 44 C.F.R. §61.13(d), I hereby authorize an additional 60-day extension of the time

---

[1] Some of the buildings were covered by policies issued directly by FEMA. LCP also brought suit against the United States based on its failure to pay the amounts sought in the later submitted proofs of loss as well. Currently pending before the Court is the United States' Motion to Dismiss [Doc. No. 33]. The Court will address the Report and Recommendations [Doc. No. 51] on that motion and any objections and responses thereto separately.

[2] The full text of SFIPs is found at 44 C.F.R. Part 61, App. A(2)

> period within which a policyholder must submit the requisite signed and sworn-to proof of loss with their NFIP insurer. With this extension, an NFIP policyholder will have a total of 120 days after the date of loss to provide the completed, signed, and sworn-to proof of loss to the insurer. This limited waiver and extension shall apply to all NFIP claims for the flood damage related to the Louisiana and Mississippi flooding occurring March 7, 2016 through March 19, 2016. This limited waiver and extension applies to SFIPs issued directly by FEMA or by private insurance companies participating in the NFIP's Write Your Own Program. . . . By granting this limited waiver and extension of the time period to send a proof of loss, FEMA does not hereby waive any other provisions of the SFIP, and all other terms and conditions of the SFIP remain in effect.

[Doc. No. 43, Exh. B, April 21, 2016 FEMA Extension Bulletin W-16028]. Therefore, LCP had until July 7, 2016, to submit sworn proofs of loss pursuant to the extended deadline.

On May 27, 2016, based on the information available at the time, LCP's representative executed sworn Proofs of Loss claiming net amounts of $226,678.68 under Building I SFIP and $284,069.70 under Building K SFIP. Thereafter, on June 1, 2016, Selective issued payments of $176,678.68 under Building I SFIP and $234,069.70 under Building K SFIP. These payments (combined with the prior advances) exhausted the net amounts claimed pursuant to the LCP's timely submitted May 27, 2016 Proofs of Loss.

Although denying a duty to do so, LCP did not submit any further sworn proofs of loss by July 7, 2016, nor did it obtain any other waiver of the Proof of Loss deadline from FEMA.

LCP presented Selective with additional Proofs of Loss executed on December 19, 2016, more than six months after the deadline. Selective denied these claims, but did not raise their untimeliness.[3] LCP's instant lawsuit against Selective is based on the December 19,

---

[3]LCP points out that it did not receive notice of the denials because Selective mailed them to an incorrect address which LCP's representative had previously corrected. Regardless, it is clear that the claims have been denied, LCP is aware of the denials, and Selective did not raised timeliness as the basis for the denials.

2016 Proofs of Loss under Building I SFIP and Building K SFIP for the flood damages that occurred on March 9, 2016.

## II. LAW AND ANALYSIS

### A. Standard of Review

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with

conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson*, 477 U.S. at 248).[4]

### B. Flood Insurance Claims

The NFIP was created by Congress to provide flood insurance coverage at or below actuarial rates, is operated and administered by FEMA,[5] and is supported by funds from the United States Treasury. *See Marseilles Homeowners Condomimium Ass'n, Inc. v. Fidelity Nat. In. Co.*, 542 F.3d 1053, 1054 (5th Cir. 2008). A policy issued under the NFIP is a Standard Flood Insurance Policy ("SFIP") and "is 'a regulation of [FEMA], stating the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders.'" *Id.* (quoting *Mancini v. Redland Ins. Co.,* 248 F.3d 729, 733 (8th Cir. 2001)). FEMA sets the terms and conditions of its own policies and those issued by WYOs like Selective. *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998). The provisions of the SFIP are "strictly construed and enforced." *Id.* at 954; *see also Darouiche v. Fidelity Nat. Ins. Co.*, 2011 WL 777874 at *5, 415 Fed. App'x 548 (5th Cir. March 7, 2011) (quoting same).[6]

---

[4]LCP made a jury demand in this matter. However, in her Report and Recommendation on the United States' Motion to Dismiss, Magistrate Judge Hayes points out that "there is no right to a jury trial where, as here, federal funds are at stake, even against a write-your-own insurer." [Doc. No. 51, p. 1 n.1 (citing *Grissom v. Liberty Mut. Fire Ins. Co.*, 678 F.3d 397, 402 (5th Cir. 2012)].

[5]The NFIP is managed by the Federal Insurance & Mitigation Administration (formerly the Federal Insurance Administrator), a division of FEMA.

[6]*Darouiche* and some of the other cited cases involved dwelling form SFIPs, issued pursuant to 44 C.F.R. pt. 61, app. A(1), and specific requirements and extensions following Hurricane Katrina. Nevertheless, the Court finds the case law precedential (as to the published decisions) and persuasive (as to the unpublished decisions) with regard to the analysis of flood

5

Federal law requires that an insured presenting a claim under the NFIP must complete a proof of loss and use his "own judgment concerning the amount of loss and justify that amount." 44 C.F.R. Pt. 61, App. A(2), Art. VII(J)(5).[7] The proof of loss must be filed within 60 days unless there is a FEMA-authorized extension. 44 C.F.R. Pt. 61, App. A(2), Art. VII(J)(4); *Forman v. FEMA*, 138 F.3d 543, 545 (5th Cir. 1998). An insured " may not sue . . . to recover money under this policy unless [it] ha[s] complied with all the requirements of the policy. . . . This requirement applies to any claim that [it] may have under this policy and to any dispute that [it] may have arising out of the handling of any claim under the policy." 44 C.F.R. § Pt. 61, App. A(2), Art. VII(J)

For claims related to the March 9, 2016 flooding, FEMA extended the deadline for submitting proofs of loss for an additional 60 days, for a total of 120 days, or until July 7, 2016, but did not waive the deadlines altogether or waive any other requirements. *See* [Doc. No. 43, Exh. B, April 21, 2016 FEMA Extension Bulletin W-16028 ("I hereby authorize an additional 60-day extension . . . By granting this limited waiver and extension of the time period to send a proof

---

insurance claims.

[7]Title 44, Code of Federal Regulation, Part 61, App. A(2),Art. VII(J)(7) and (8) provide as follows:

> The insurance adjuster whom we hire to investigate your claim may furnish you with a proof of loss form, and she or he may help you complete it. However, this is a matter of courtesy only, and you must still send us a proof of loss within 60 days after the loss even if the adjuster does not furnish the form or help you complete it. We have not authorized the adjuster to approve or disapprove claims or to tell you whether we will approve your claim.

of loss, FEMA does not hereby waive any other provisions of the SFIP, and all other terms and conditions of the SFIP remain in effect"]. The timely submitted sworn proofs of loss were paid by Selective, and all that remains are untimely sworn proofs of loss.

LCP argues, however, that Selective's position conflicts with FEMA's claims-handling guidelines and procedures, particularly in the post-Hurricane Sandy.  It points out that FEMA's National Flood Insurance Program – "Claims Handbook," FEMA F-687, provides that an insured may file a supplemental claim and advises insureds to immediately notify their adjuster, agent, and/or company representative if post-deadline damage is discovered.  *Id.* at p. 7.  The Handbook provides further that the "insurance carrier **may contact** FEMA to directly accept a claim in the event you make an additional claim after the time limitation."  *Id.* (emphasis added). Finally, the Handbook provides that "NFIP makes decisions about claims filed after 60 days on a case-by-case basis." *Id*. at p. 8.

LCP explains further that FEMA has taken a "kinder and gentler" approach after criticism following its handling of Hurricane Sandy claims.  It provides a declaration from Louis Fey, an experienced claims adjusters averring how Selective should have handled LCP's claims and citing to FEMA's handbook.  He further avers that FEMA is finalizing an updated version of its Handbook and that Selective should not be permitted to rely on a "no longer stringent proof of loss requirement."  [Doc. No. 48, Exh. H, Declaration of Louis Fey, ¶¶ 56-57].  LCP argues that Selective had a duty to "comply with written standards, procedures, and guidance issued by FEMA," 44 C.F.R., Pt. 62, App. A, Art. 2(G)(1), which permitted LCP to submit supplemental proofs of loss after the deadline, and which Selective could have submitted, and FEMA could have considered.

7

In support of its arguments, LCP cites the Court to a decision of its sister court in the Eastern District of Louisiana, *Smith v. American Bankers Ins. Co. of Florida*, No. 13-5684, 2014 WL 2155030 (E.D. La. May 22, 2014). That case involved homeowners who suffered property damage as a result of Hurricane Isaac on August 28, 2012. The Smiths worked with an independent adjuster to estimate their damage. On September 17, 2012, the WYO carrier, American Bankers, advanced $10,000.00 for building damages and $5,000.00 for contents. On September 19, 2012, the Smiths provided the independent adjuster, David Onstad, with an estimate prepared by a contractor stating that it would cost $64,268.00 to replace all the ceramic tile in the house. On October 2, 2012, American Bankers made further payments of $48,989.72 for building damages and $44,115.97 for contents damages. Together, these payments amounted to $108,105.69.

On October 26, 2012, the Smiths' adjuster, Michaelson & Messinger Insurance Specialists, LLC, submitted a proof of loss form to American Bankers, signed by Mr. Smith, but which listed the policy limits and listed their damages as "undetermined." *Id.* at *1. The form indicated that American Bankers should contact Michaelson & Messinger with any questions or if it needed "anything additional." *Id.* However, on November 24, 2012, American Bankers rejected the claim, finding that the claim had been paid in full as provided under the first proof of loss and denied coverage as to the ceramic tile. Michaelson & Messinger then submitted an estimate to the independent adjuster, Mr. Onstad, indicating damage of $221,431.90. American Bankers again denied the claims, and on appeal, FEMA also denied the claim. The Smiths then filed suit against American Bankers.

In its motion for summary judgment, American Bankers argued that the Smiths' proof of

loss was invalid because it does not provide an amount claimed, and a valid proof of loss is a condition precedent to litigation. The Smiths responded that the proof of loss was valid because it, with the estimate, provided extensive information about the amount claimed. American Bankers responded that, even if the Smiths had submitted the proof of loss and the estimate contemporaneously, the proof of loss would still not be valid because it did not include an amount claimed on the form itself. The district court denied summary judgment. Although the court found that, generally, an insured's failure to provide a complete, sworn proof of loss, as required by the SFIP, relieves the insurer from an obligation to pay, a proof of loss may be considered without a specific amount of damages if there is enough information for FEMA to evaluate the merits of the claim.

However, as Selective points out, the Smiths were paid on their initial proof of loss and later submitted a second **timely** formal proof of loss. The Smith case does not address the situation herein—where LCP was paid in full based on its sworn proof of loss, but now seeks additional amounts based on an untimely proof of loss.[8]

Moreover, in a 2015 case, the Fifth Circuit rejected an insured's argument that "a later supplement to an incomplete proof of loss sufficiently complies with SFIP regulations." *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 534 n.4 (5th Cir. 2015). The *Ferraro* Court explained that the non-binding decision in "*Smith* . . . left open only the narrow possibility that 'if the same amount is claimed, and only the decision is disputed, additional proofs of loss may not be

---

[8]The Smith Court does note in passing that 60 days was insufficient time for the Smiths to assess their damages, but the Court does not find this statement persuasive in light of the Fifth Circuit precedential and persuasive authority.

necessary.'" *Id.*[9]  In *Ferraro*, the insureds timely provided a signed, sworn proof of loss for damage arising from Hurricane Isaac within the 240 days permitted by a FEMA-authorized extension, but advised a supplement would follow. They then supplemented with a report from a public adjuster but did not submit a second, sworn proof of loss within the time permitted.

Under those circumstances, the Fifth Circuit held, as a matter of first impression, that an insured must submit an additional proof of loss to recover an additional amount on a preexisting claim. *Id.* at 532-34. In reaching that holding, the Fifth Circuit reiterated that "[a]n insured's failure to strictly comply with the SFIP's provisions—including the proof-of-loss requirement—relieves the federal insurer's obligation to pay the non-compliant claim." *Id.* at 534. Thus, even where the insurer had notice within the 240 days that the insured intended to supplement its claim, the insurer was entitled to summary judgment when it failed to submit a second sworn proof of loss during that time.

While not precisely addressing the factual scenario before this Court, *Ferraro* when read along with prior Fifth Circuit precedential and persuasive authority compels judgment in favor of Selective. Although Selective "may" have contacted FEMA to inquire about a further extension under the Handbook provisions, it was not required to do so. LCP, on the other hand, **was required under the SFIP** (and the FEMA-authorized extension) to submit its sworn proofs of loss by July 7, 2016.[10] *See Dwyer v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 565 F.3d 284, 287 (5th Cir. 2009)

---

[9]Notably, in *Smith*, the "original proof of loss requested $250,000 and supplemental estimate itemized claim at $221,431.90." *Ferraro*, 796 F.3d at 534 n.4.

[10] The parties have cited the Court to no authority, nor has the Court found any, which holds that the FEMA handbook constitutes an express waiver of the SFIP requirements. Nonetheless, the cited provisions do not raise a genuine issue of material fact for trial for the reasons stated.

(distinguishing between the proof of loss clause of the SFIP that uses the word "must" and the appraisal clause of the SFIP that uses the word "may" and finding the former is mandatory but the latter is optional). It failed to do so with regard to the December 19, 2016 proofs of loss, and it cannot recover the additional amounts sought.

Finally, LCP's arguments concerning waiver and estoppel do not raise a genuine issue of material fact for trial. The SFIP provides: "This policy cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action that we take under the terms of this policy can constitute a waiver of any of our rights." 44 C.F.R. § Pt. 61, App. A(2), Art. VII(D). The only waiver in this case was FEMA's 60-day extension of the time for submitting sworn proofs of loss. Neither Selective's failure to state the lack of timeliness as a basis for denial of the claim, nor its handling of this claim otherwise can constitute a waiver of the statutory and regulatory requirements. *See Gowland v. Aetna*, 143 F.3d 951,953 (5th Cir. 1998) (Insurer did not waive the proof of loss requirement by failing to state it as a basis for the denial of the claim or by re-opening the file where "the federal regulations provide that no provision of the policy may be altered, varied, or waived without the *express* written consent of the Federal Insurance Administrator.").

Further, the Fifth Circuit is clear that, unless FEMA waives the proof-of-loss requirement or further extends the deadline, there is no equitable estoppel claim available. Indeed, "because any payments on [LCP's] claim would come from the public treasury," any estoppel claim against a WYO insurer is an estoppel claim against the United States, and the Fifth Circuit has "never upheld such claims in the context of the NFIP." *Collins v. National Flood Ins. Program*, 2010 WL 3528831, 394 Fed. App'x. 177, 179-80 (Sept.10, 2010); *see also Marseilles*, 542 F.3d at 1056

11

(refusing to apply equitable estoppel and finding that failure to comply with the proof-of-loss requirement precluded the claim); *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 387-88 ( 2005) ("Here . . . we find the doctrine of equitable estoppel inapplicable. The Supreme Court has made clear that 'judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized.' . . . Under the Appropriations Clause of the Constitution, '[m]oney may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute.'" . . . [This] principle applies to claims against WYOs, because SFIPs are ultimately supported by federal funds.") (quoting *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990)); *Forman v. FEMA*, 138 F.3d 543 (5th Cir. 1998) (inadequate proof of loss precluded suit; conditions imposed by Congress for disbursing the Federal treasury cannot be estopped).

Finally, LCP contends that summary judgment is premature because discovery is ongoing. In its opposition memorandum, LCP indicated that discovery responses were due May 14, 2018, but has not moved the Court to supplement its filings or for leave to file a sur-reply. Regardless, the Court finds that the identified discovery responses would not change the analysis under the precedential and persuasive authority.

### III. CONCLUSION

For the reasons set forth above, Selective's Motion for Summary Judgment is GRANTED,

and LCP's claims against it are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 18th day of May, 2018.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE